FILED

2015 SEP 24   PM 12:41

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LYNN FEGADEL,

                Plaintiff,

v.

8:15 CV 2228 T 17 JSS

CASE NO.

OCWEN LOAN SERVICING, LLC,

                Defendant.

_____/

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff, Lynn Fegadel, by and through the undersigned attorney, hereby files this Class Action Complaint against the Defendant Ocwen Loan Servicing, LLC, and states as follows:

### PRELIMINARY STATEMENT

1.    On or about February 11, 2015, Plaintiff filed a voluntary petition under Chapter 7 of Title 11 of the United States Code, (hereinafter referred to as the "Bankruptcy Code").

2.    Defendant Ocwen Loan Servicing, LLC ("Ocwen") was listed in the Court's affixed creditor matrix, and thus, received notice of Plaintiff's bankruptcy filing.   (See Composite Exhibit "A", Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines, and Creditor's Matrix and Certificate of Notices, Discharge Order).

3.    Despite receiving the notice of Plaintiff's bankruptcy filing, Ocwen continued to attempt the debt from Plaintiff, thus violating the Florida Consumer Collections Practices Act, Section 559.55 *et seq.*, Florida Statutes ("FCCPA").

4.    Plaintiff seek damages, costs and attorney's fees from the Defendant for those violations.

1

TKA -32370
$400

## JURISDICTION AND VENUE

5.      Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

6.      Federal jurisdiction exists pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), as the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and is a class action in which a member of the class of plaintiffs is a citizen of a state different from Defendant.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims and injuries occurred in the Middle District of Florida.

## PARTIES

8.      Plaintiff is a natural person who resides in Pinellas County, Florida.  Plaintiff is a "consumer," as that term is defined by Fla. Stat. § 559.55(2).

9.      Defendant Ocwen Loan Servicing, LLC, is a Delaware corporation, does business in the State of Florida, and is a "person" under Fla. Stat. § 559.72.

10.     All conduct alleged herein by Plaintiff was authorized, approved and/or ratified by one or more officers, directors, or managers of the Defendant.  The conduct alleged herein was a claim to enforce a debt when the Defendant had knowledge that the debt was not legitimate and/or did not exist.

11.     The Defendant's communications set forth below are wholly without excuse.

2

12.     At all times mentioned herein, the agent(s) or employee(s) of Defendant were acting within the course and scope of such agency or employment and were acting with the consent, permission, and authorization of Defendant.

## CLASS ACTION ALLEGATIONS

13.     Plaintiff bring this action as a class action, pursuant to Federal Rule of Civil Procedure 23, on her own behalf and on behalf of all other similarly-situated consumers who received a discharge in bankruptcy within the United States Bankruptcy Court for the Middle District of Florida who have been subjected to Defendant's practices, described below, within two (2) years of the date of Plaintiff's complaint, together with their successors in interest (the "Consumer Class").

### *Numerosity*

14.     The class is so numerous that joinder of all members is impracticable.  Plaintiff estimates the Consumer Class has approximately 10,000 members.

### *Commonality*

15.     There are questions of law and fact that are common to the Consumer Class and which predominate over questions affecting any individual Consumer Class member. Specifically, these common questions of law and fact include, without limitation, (1) whether Defendant violated the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72(7); (2) whether Defendant violated the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72(9); (3) whether Defendant violated the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72(18); (4) whether Defendant violated the Bankruptcy Code.   Also, all of the

3

Consumer Class members filed for bankruptcy in the United States District Court for the Middle District of Florida, Tampa Division, and received the same or substantially similar communications from Defendant as described below.

### Typicality

16.     Plaintiff's claims are typical of the claims of the Consumer Class, and Plaintiff has no interest adverse or antagonistic to the interests of other members of the Consumer Class.

### Adequacy of Class Representation

17.     Plaintiffs will fairly and adequately protect the interests of the Consumer Class and have retained experienced counsel, competent in the prosecution of class action litigation.

### Predominance of Common Questions

18.     The common questions set forth in Paragraph 15 predominate over any individual issues.

### Superiority of Class Resolution

19.     A class action is superior to other methods for the fair and efficient adjudication of the claims asserted herein.   Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of the class action.

20.     A class action will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.

21.     Class treatment will also permit the adjudication of relatively small claims by many Consumer Class members who could not otherwise afford to seek legal redress for Defendant's conduct.

22.     Absent a class action, the Consumer Class members will continue to have their rights violated and will continue to suffer monetary damages.

23.     Defendant's actions are generally applicable to the entire Consumer Class and accordingly, the relief sought is appropriate with respect to the entire Consumer Class.

## FACTUAL ALLEGATIONS

24.     Many people in this country have recently faced financial devastation. Millions of homeowners have been forced to surrender their homes to a lender and file for bankruptcy protection.

25.     Immediately upon filing a bankruptcy petition, an "automatic stay" goes into effect. This stay is provided for by federal law and holds that all efforts to collect debts from the bankrupt person must cease and desist immediately. The purpose of the automatic stay is to give the debtor time to sort out his or her affairs without the pressure and stress of debt collectors' and creditors' relentless harassment.

26.     In bankruptcy, consumers file a voluntary petition in which they list all of their debts and assets.

27.     Through the bankruptcy process, a person is eligible to receive a discharge of debt, including debt secured by property the debtor intends to surrender.

28.     Along with the discharge of the debt, the Court issues a discharge injunction (the "Discharge Injunction").

29.     The Discharge Injunction forbids any creditor or collector of a discharged debt from taking any action in furtherance of collecting that discharged debt from the debtor.

30.     Ultimately, the Discharge Injunction is the benefit of going through the ordeal of bankruptcy.   The Discharge Injunction is what grants the debtors the "fresh start" promised under the law.

31.     Congress made it a central purpose of the bankruptcy code to give debtors a fresh start in life and a clear field for future efforts, unburdened by the existence of old debts.

32.     When creditors continue to harass the most vulnerable - people who have already taken every step possible to move on with their lives with their debts behind them – they demean the rights afforded to every citizen.  They also violate federal and state law.

33.     Defendant Ocwen serviced a first mortgage lien securing a promissory note (the "Debt") on real property owned by Fegadel in Dundein, Florida.

34.     On February 11, 2015, Fegadel filed for Chapter 7 bankruptcy protection and listed the Debt in her bankruptcy schedules.

35.     Defendant was provided actual notice of both Fegadel's' bankruptcy and the fact that Fegadel was represented by counsel, Sandra Day, Esq.

36.     Further, Fegadel's bankruptcy petition identified that Fegadel intended to surrender the property as part of her bankruptcy.  Moreover, Fegadel actually moved out of the house during the course of her bankruptcy.

37.     Additionally, the Debt itself was discharged on May 20, 2015, when the Court entered a discharge order in Fegadel's bankruptcy case.  Defendant was provided notice of the discharge by the Bankruptcy Court on or about May 22, 2015.

38.     Nevertheless, Defendant Ocwen continued trying to collect the Debt.

39. Despite having received notice of Plaintiff's bankruptcy filing, and the discharge of the Debt, which extinguished both the mortgage lien and the underlying promissory note, on or about July 16, 2015, and each and every month thereafter, Defendant sent Plaintiff a written communication in which it attempted to collect the Debt. *See* the Billing Statements, attached Exhibit B.

40. The Billing Statements falsely indicate that Fegadel is "Past Due" in her payment of the Debt.

41. Further, the Billing Statements falsely indicate that Fegadel has a "Total Amount Due" of hundreds of thousands of dollars.

42. The Billing Statements also falsely reflect interest, advances, finance charges, and other charges continuing to accrue on the Debt.

43. The Billing Statements also contain a payment coupon to be sent to Defendant with payment. 44. Further, on or about September 11, 2015, Defendant sent Plaintiff a Request for Mortgage Assistance / Hardship Affidavit encouraging Plaintiff to request a loan modification on the discharged Debt. A copy of that Request for Mortgage Assistance is attached as Exhibit C.

45. The incentive for Defendant to engage in such conduct is crystal clear – it has been paid many millions of dollars by the federal government for enrolling people in mortgage modification programs.

46. In response to the subprime mortgage crisis, in 2008 Congress enacted legislation giving the United States Treasury Department the authority to launch the Home Affordable Modification Program ("HAMP").

47.     The HAMP guidelines promulgated by the government have solicitation requirements that obligate lenders to inform consumers of options available to them under the program.

48.     However, those guidelines specifically exclude individuals who have obtained a bankruptcy discharge from that solicitation requirement.   The reason for this is obvious; those who have gone through bankruptcy have earned the right to be left alone.

49.     Further, under those same HAMP guidelines, lenders and servicers like Defendant are  supposed to contact those who have been through a bankruptcy only upon a request from the borrower, borrower's counsel, or the bankruptcy trustee.

50.     The incentive for the banks to break the law and ignore HAMP guidelines is massive.  The banks have reaped a windfall in federal funds.

51.     In particular, according to United States Treasury Department Reports, Defendant has received more than $365 million dollars in HAMP incentive payments from the government.

52.     Indeed, in March 2010, the federal government doubled the incentive for servicers to complete a HAMP modification, increasing it to $2,000 per loan.

53.     The incentives to continue harassing bankrupt debtors who no longer owe Defendant any money are obvious: by illegally manipulating and scheming to get those debtors into unnecessary loan modifications, Ocwen is reaping a windfall.

54.     Prior to each of the aforementioned communications with Plaintiff, the Defendant had received notice that attorney Sandra Day represented Plaintiff with respect to the Debt.

55.     The above mentioned debt that the Defendant attempted to collect from the Plaintiff was listed under Plaintiff's Chapter 7 bankruptcy.

8

56.     The actions of the Defendant as alleged herein constitute willful, violations of the FCCPA.

57.     Defendant has failed to implement any effective policy to assure that its collection personnel comply with the FCCPA.

58.     Defendant has failed to implement any effective procedures to eliminate the improper contacts with consumer debtors who are involved or have been involved in bankruptcy proceedings, despite having actual knowledge of the bankruptcy.

59.     Defendant has failed to implement any system to properly identify bankruptcy accounts, even though it has knowledge that its current system violates the law by continuing collection activities against individuals it knows to be in bankruptcy.

60.     All conditions precedent to this action have occurred, have been satisfied or have been waived.

<u>**COUNT I**</u>

<u>**VIOLATION OF THE FCCPA BY DEFENDANT OCWEN**</u>

61.     This is an action against Ocwen for violation of Fla. Stat. § 559.55 et seq.

62.     Plaintiff re-alleges and incorporates paragraphs 1 through 60, as if fully set forth herein.

63.     Defendant communicated certain information to Plaintiff as set forth above, which constitutes "communication," as defined by Fla. Stat. § 559.55(5).

64.   Fla. Stat. § 559.72 provides, in pertinent part:

In collecting consumer debts, no person shall:

(7)   Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

(9)   Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

(18)   Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

65.   Through its conduct, described above, Ocwen directly and through its agents violated the above sections of the FCCPA.

66.   All conditions precedent to this action have occurred, have been satisfied, or have been waived.

67.   Pursuant to Fla. Stat. § 559.77(2), as a result of the above violations of the FCCPA, Ocwen is liable to Plaintiff for actual damages, statutory damages, and reasonable attorney's fees and costs.

68.   Based upon the willful, intentional, knowing, malicious, repetitive and continuous conduct of Defendant as described herein, Plaintiff is also entitled to an award of punitive damages in accordance with Fla. Stat. §§ 559.77 and 768.72.

10

69.     Each communication, made in violation of the FCCPA is a separate justiciable issue entitled to adjudication on its individual merits and is eligible for an award of damages. Pursuant to Federal Rule of Civil Procedure 10(b), each violation has been consolidated into a single count to promote clarity.

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against Ocwen, finding that Ocwen violated the FCCPA, awarding Plaintiff actual damages, statutory damages, punitive damages, attorneys' fees and costs pursuant to Fla. Stat. § 559.77(2), and awarding Plaintiff any and all such further relief as is deemed necessary and appropriate.

## COUNT II

### INJUNCTIVE RELIEF AND MONETARY SANCTIONS FOR DISCHARGE INJUNCTION VIOLATIONS BY DEFENDANT OCWEN

70.     This is an action against Ocwen for violation of the Discharge Injunction.

71.     Plaintiff re-alleges and incorporates paragraphs 1 through 60, as if fully set forth herein.

72.     Plaintiff's Discharge Order included a discharge of the Ocwen mortgage and note as to Plaintiff personally enjoining *in personam* collection of the debt.

73.     Defendant was provided a copy of the Discharge Order by the Bankruptcy Court.

74.     Based on its awareness of Plaintiff's bankruptcy and its receipt of the Discharge Order and Discharge Injunction, Defendant had actual knowledge of the discharge.

11

75.     Nevertheless, Defendant attempted to collect the debt from Plaintiff, which had been discharged.     Plaintiff was not personally obligated to pay the debt after entry of the discharge order.

76.     Defendant's continued collection of the discharged debt, having actual knowledge of the discharge, constitutes a sanctionable violation of the Discharge Injunction.

77.     11 U.S.C. § 105(a) authorizes the use of a court's authority to utilize its equitable powers to enforce the Discharge Injunction, to grant monetary relief, and to enjoin acts in violation of the Discharge Injunction.

78.     As a result of the above violations of the discharge injunction, Defendant should be sanctioned.

WHEREFORE, Plaintiff respectfully requests this Court enter an order against Defendant: (1) finding that Defendant violated the Discharge Order and imposing sanctions against Defendant to punish Defendant for its violations, deter attempts to collect debts not owed, and deter future discharge injunction violations, and (2) awarding Plaintiff any and all damages (including but not limited to, mental anguish, despair, frustration, embarrassment, nervousness, anger, and loss of capacity to enjoy life) as well as attorneys' fees and costs.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby respectfully demand a trial by jury.  U.S. Const. Amend.

7 and Fed. R. Civ. P. 38.

Dated:  09/24/15

**KYNES, MARKMAN & FELMAN, P.A.**
P.O. Box 3396
Tampa, Florida  33601
Phone:  (813) 229-1118
Fax:     (813) 221-6750


\_\_/s/Katherine Yanes_____
**KATHERINE EARLE YANES, ESQ.**
Florida Bar. No. 658464
e-mail: kyanes@kmf-law.com

Respectfully Submitted,

**CENTRONE & SHRADER, PLLC**
612 W. Bay Street
Tampa, Florida 33606
Phone:  (813) 360-1529
Fax:      (813) 336-0832


\_/s/ Brian Shrader_____
**BRIAN L. SHRADER, ESQ.**
Florida Bar No. 57251
e-mail: bshrader@centroneshrader.com
**GUS M. CENTRONE, ESQ.**
Florida Bar No. 30151
e-mail: gcentrone@centroneshrader.com
**Attorneys for Plaintiff**

13

**VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF
LYNN FEGADEL**

I, Lynn Fegadel, pursuant to 28 U.S.C. §1746, under penalties of perjury, state as follows:

1.  I am a Plaintiff in this civil proceeding.

2.  I have read the above entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.


_____                    _____
Lynn Fegadel                                         Date
                                                     9-23-15

14